IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN STERLING COLLINS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 06-4702 |
| | : | |
| MARILYN L. CHRISTIE, | : | |
| executrix of estate of Edwin | : | |
| Lloyd, deceased, et al., | : | |
| Defendants. | : | |

MEMORANDUM AND ORDER

Stengel, J.                                                August 22, 2007

John Sterling Collins alleges that the circumstances surrounding his arrest in September 2004 and his subsequent termination from his employment violated his federal civil rights and several state laws. Several of the defendants named in Mr. Collins's complaint have filed motions to dismiss all or some of the counts against them. For the reasons set forth below, I will grant defendants Adam Columbo and Lehigh Valley Hospital's motion to dismiss and I will grant defendant Marilyn L. Christie's motion to dismiss in part and deny it in part.[1]

I.    BACKGROUND[2]

The plaintiff, John Sterling Collins, is an African American who was employed by

---

[1] Defendant Dr. Kelly Freed filed motions to dismiss and a motion to strike. See Document Nos. 19, 41, and 48. On May 22, 2007, the plaintiff filed Notice of Dismissal of Defendant Kelly Freed, MD, Pursuant to Federal Rule of Civil Procedure 41(a)(1). See Document No. 58. Accordingly, the defendant Dr. Kelly Freed's motions are moot.

[2] As I am required to do for purposes of this motion to dismiss, I have accepted as true all allegations in the complaint.

Country Meadows, a nursing facility and retirement community, as a certified nursing assistant.  The Country Meadows facility provided assisted living care to the elderly, including services to residents suffering from Alzheimer's disease and dementia.  As part of Collins's job responsibilities at Country Meadows, he would routinely interact and provide care for the now deceased resident, Edwin Lloyd.  Mr. Lloyd suffered from Alzheimer's.

On September 24, 2004, in an attempt to get the plaintiff fired from his job, Edwin Lloyd made knowingly false accusations against the plaintiff to the effect that the plaintiff had punched him.  Mr. Lloyd also conspired with certain employees of Country Meadows to have the plaintiff terminated from his job and arrested.  In furtherance of that conspiracy, Country Meadows and Lloyd initiated a criminal investigation against the plaintiff.[3]  Contrary to Country Meadows's objective medical evidence that indicated no signs of physical abuse, the defendants made false accusations that plaintiff assaulted Lloyd by punching him in the chest and leaving a bruise on his chest and breaking his ribs.  These actions by Mr. Lloyd and the Country Meadows employees were motivated by their racial animus of the plaintiff.  Based on these accusations, Collins was arrested on charges of aggravated and simple assault on September 25, 2004 and subsequently terminated from

---

[3]The complaint contains four counts against Officer Louis Scott Lipare based on his inquiry into the September 24, 2004 incident between the plaintiff and Mr. Lloyd.  In particular, the plaintiff alleges that Officer Lipare failed to conduct a full and impartial investigation and arrested the plaintiff contrary to objective evidence.  The plaintiff avers that Officer Lipare's actions were motivated by Officer Lipare's racial animus against the plaintiff.  As the counts against Officer Lipare are not pertinent to this discussion or the pending motions, there is no need to discuss in greater detail the specific factual allegations surrounding those claims.

his position at Country Meadows on October 14, 2004

It appears that Mr. Lloyd received medical care and treatment at Lehigh Valley Hospital ("LVH") after his alleged assault.  At LVH, defendant Adam Columbo, D.O. failed to properly interpret x-rays of Mr. Lloyd.[4]  Dr. Columbo read the x-rays as demonstrating new fractured ribs, when in fact they revealed old healed fractured ribs.  In contravention of hospital protocol, Dr. Columbo then conveyed this misdiagnosis to the police.[5]  Dr. Columbo was part of LVH's residency program and he was not authorized to make specific diagnoses unless his work product was checked by staff surgeons.  The police used this false medical information to arrest and incarcerate the plaintiff for assaulting Mr. Lloyd.  Subsequently, the plaintiff was subjected to a publicized criminal trial for the assault charges in Northampton County, Pennsylvania.  At the trial, Dr. Kelly Freed testified that Dr. Columbo's diagnosis of the fractured ribs was wrong and, as a result, the charges against the plaintiff were dismissed.

The plaintiff now seeks relief for the alleged violations of his civil rights and various state rights from the following defendants: Marilyn L. Christie, executor of the estate of Edwin Lloyd, deceased; George M. Leader Family Corporation t/a Country Meadows; Country Meadows Associates, LP; Country Meadows Associates, II, LP;

---

[4]The plaintiff also alleged in the complaint that Kelly Freed, M.D. misread the x-rays of Mr. Lloyd.

[5]The complaint alleges that Dr. Colombo was advised by Mr. Lloyd, or others, that the purported assailant was African American.

Officer Louis Scott Lipare; Adam Columbo, D.O.; and Lehigh Valley Hospital, Inc.  More

specifically for purposes of the outstanding motions, as to defendants Dr. Columbo and

Lehigh Valley Hospital, Inc. the complaint alleges civil rights violations pursuant to 42

U.S.C. § 1981 and § 1983 as well as state claims for medical negligence and malicious

prosecution.  Against defendant Marilyn Christie, the plaintiff alleges federal civil rights

violations under 42 U.S.C. § 1981 and § 1985 and a state law claim of malicious

prosecution.

Now pending before this court are three motions filed by defendants Dr. Columbo

and LVH: (1) motion to dismiss  all claims under Rule 12(b)(6); (2) motion to dismiss the

claim for medical negligence pursuant to Rule 41(b); and (3) motion to strike plaintiff's

certificates of merit.  See Docket Nos. 8, 42, 51.  In addition, defendant Christie filed a

motion to dismiss pursuant to Rule 12(b)(6).  See Docket No. 32.

## II.   RULE 12(B)(6) MOTION TO DISMISS STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the court must accept the complaint's allegations as true and draw all reasonable

inferences in the plaintiff's favor.  Zimmerman v. HBO Affiliate Group, 834 F.2d 1163,

1164-65 (3d Cir. 1987).  Courts are not obligated, however, to credit the complaint's "bald

assertions" or "legal conclusions."  In re Burlington Coat Factory Sec. Litig., 114 F.3d

1410, 1429 (3d Cir. 1997) (citation omitted).

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to

state a claim upon which relief can be granted."  The rule is designed to screen out cases where "a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted."  Port Auth. v. Arcadian Corp., 189 F.3d 305, 311-12 (3d Cir. 1999).  Under Rule 12(b)(6), a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The issue, therefore, is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support its claims.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); See also Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

## III.  DISCUSSION

### A.     Defendants Adam Columbo and Lehigh Valley Hospital Motion to Dismiss

#### 1.     42 U.S.C. § 1983 Cause of Action

Under 42 U.S.C. § 1983, a private party may recover in an action against any person acting under color of state law who deprives the party of his or her constitutional rights.[6]  Therefore, in order to succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the violation of a right secured by the Constitution, and (2) that the

---

[6]Section 1983 provides in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .
42 U.S.C. § 1983.

deprivation was committed by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

Defendants Dr. Columbo and LVH argue that the plaintiff's § 1983 claim against them must be dismissed because the plaintiff has failed to allege that they violated any constitutional rights "under color of state law."  The plaintiff responds that he has satisfactorily pled a cause of action under § 1983.  The plaintiff contends that under the state action theory enunciated in Dennis v. Sparks, 449 U.S. 24 (1985), Dr. Columbo and LVH were acting under color of state law when they participated in the plaintiff's arrest. To determine if a person was acting under color of state law, a court must ask whether the plaintiff's deprivation was "caused by the exercise of some right or privilege created by the State" and whether the defendant "may fairly be said to be a state actor." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).  A defendant may be considered a state actor because he is a "state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Id.  See Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (noting that state action exists only when "there is such a close nexus between the state and the challenged action that seemingly private behavior may be fairly treated as that of the state itself" (quotations and citation omitted)); Leshko v. Servis, 423 F.3d 337 (3d Cir. 2005) (discussing the two categories of state action cases); Benn v. Universal Health Sys., Inc., 371 F.3d 165 (3d Cir. 2004).

6

In the present case, LVH operates a private hospital.  Defendant Dr. Columbo was a physician in the residency program of the hospital.  LVH and its physician were not officers or employees of any state government agency or unit.  Therefore, in order to hold either of the defendants liable under section 1983, I must determine if their alleged actions are "fairly attributable to the state."  The Third Circuit, in following the Supreme Court's decision in Dennis v. Sparks, has held that "a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983."  Abbott v. Latshaw, 164 F.3d 141, 147-48 (3d Cir. 1998).  See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).  In order to establish the necessary level of joint participation and collaboration, the plaintiff must allege:

> the existence of a pre-arranged plan [between the police and a private entity] by which the police substituted the judgment of private parties for their own official authority.  Absent allegations . . . tending to show such a plan, [a private party cannot] be said to have engaged in the "concerted" or "joint action" with the police necessary to bring them within the scope of a § 1983 claim.

Cruz v. Donnelly, 727 F.2d 79, 80 (3d Cir. 1984);[7] Annan-Yartey v. Honolulu Police Dep't, 475 F. Supp. 2d 1041, 1046-48 (D. Haw. 2007) (discussing cases that have applied the joint action test)

---

[7]Cruz was decided under the heightened pleading standard required for section 1983 actions until the Supreme Court rejected the standard in Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).  The fact that the pleading standard is less exacting now does not, however, excuse plaintiff's failure to plead facts sufficient to allege a critical element of his § 1983 cause of action.

The critical issue for this court is "whether the state, through its agents or laws, has established a formal procedure or working relationship that drapes private actors with the power of the state." Id. at 80. "Merely calling the police, furnishing information to the police, or communicating with a state official does not rise to the level of joint action necessary to transform a private entity into a state actor." Cooper v. Muldoon, No. 05-4780, 2006 U.S. Dist. LEXIS 23388, at * 7 (E.D. Pa. Apr. 26, 2006) (citing cases to support statement). See also Arnold v. Int'l Business Mach. Corp., 637 F.2d 1350, 1357-58 (9th Cir. 1981) (noting that the Seventh Circuit has held, that a person who supplies inaccurate information that leads to an arrest is not involved in joint activity with the state and, thus, not liable under section 1983); Caswell v. BJ's Wholesale Co., 5 F. Supp. 2d 312, 318-19 (E.D. Pa. 1998) (holding that a private entity who reported a possible crime to police and turned over possible evidence to them was not a state actor).

The plaintiff has not alleged any type of pre-arranged plan or conspiracy between the police that arrested the plaintiff and defendants Dr. Columbo and LVH to deem the defendants state actors. The complaint alleges that Dr. Columbo made a hurried diagnosis of Mr. Lloyd's condition and disclosed that unauthorized, wrong diagnosis to the police. According to the plaintiff, Dr. Columbo knew that the information they were conveying to the police would result in the plaintiff's arrest.[8] This conduct and interaction with the

---

[8] Paragraph 96 of the complaint states: "The Defendants, Columbo, Freed and Lehigh Valley, actively participated in the decision to arrest the Plaintiff, and became clothed under the authority of state law by going with state actors for purposes of effectuating an arrest." This bare assertion and legal conclusion are not supported by the factual allegations in the complaint. Defendants Columbo and

police are insufficient to establish Dr. Columbo or LVH as state actors.  See, e.g., Fisk v. Letterman, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005)  ("Communications between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party into a state actor."); Benavidez v. Gunnell, 722 F.2d 615, 618 (10th Cir. 1983) ("mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § 1983").[9]  There is no allegations that the plaintiff's arrest resulted from "concerted action tantamount to substituting the judgment of a private party for that of the police or allowing the private party to exercise state power."  Alexis v. McDonald's Rest., 67 F.3d 341, 351-52 (1st Cir. 1995).

Accordingly, defendants Dr. Columbo and LVH were not acting under color of state law and the plaintiff has failed to state a claim against them under § 1983.  I will dismiss the § 1983 claims (Count VI) against Dr. Columbo and LVH.[10]

---

LVH's only alleged participation in the arrest was Dr. Columbo's careless conduct in his diagnosis of Mr. Lloyd and his reporting the diagnosis to the police.  This does not equate to state action. See Fisk v. Letterman, 401 F. Supp. 2d 362, 367 (S.D.N.Y. 2005) ("[A] private party who  . . . provides [police] with information that may lead to an arrest of an individual does not become a state actor rendering that party liable under § 1983 to the person detained . . . .").  Therefore, I will disregard this unsupported statement in my consideration of the motion.  See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (stating that court need not credit a complaint's "bald assertions" or "legal conclusions").

[9]Moreover, even if Dr. Columbo intentionally provided the false information to the police, the plaintiff would still fail to state a claim under § 1983. See Kahermanes v. Marchese, 361 F. Supp. 168, 171 (E.D. Pa. 1973) ("The deliberate giving of false information by an individual to a police officer to cause the arrest of another does not give rise to a cause of action under the Civil Rights Acts.").

[10]In addition, as LVH properly points out, the § 1983 action against LVH should be dismissed because LVH's  liability is based upon the concept of respondeat superior.  See Compl. ¶ 101.  A defendant in a civil rights action must have personal involvement in the alleged wrongful conduct in

2.      42 U.S.C. § 1981 Cause of Action

Defendants Dr. Columbo and LVH also seek dismissal of the 42 U.S.C. § 1981[11]

claim against them.  They argue that the complaint fails to allege intentional discrimination

on the part of Dr. Columbo and LVH with respect to the plaintiff's right to contract.  The

plaintiff's response did not address this portion of the defendants' motion to dismiss.[12]

A plaintiff alleging a claim pursuant to § 1981 must plead sufficient facts in support

of the following elements: "(1) [that plaintiff] is a member of a racial minority; (2) intent

to discriminate on the basis of race by the defendant; and (3) discrimination concerning

one or more of the activities enumerated in the statute[,] which includes the right to make

and enforce contracts."  Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001)

---

order to be liable.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). When the defendant is a private corporation, the corporation can only be held liable if it maintained a policy or practice that caused a constitutional violation.  See Natale v. Camden County Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003); Robus v. Pa. Dep't of Corr., No. 04-2175, 2006 U.S. Dist. LEXIS 49943, at *21-25 (E.D. Pa. July 20, 2006).  The plaintiff has not averred LVH had such policies or practices.

[11]Section 1981, which prohibits racial discrimination in the making and enforcement of contracts and property transactions, provides:
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

[12]The local rules of this court supply an additional and independent basis for granting defendants' motion with respect to the § 1981 claim.  Local Rule 7.1(c) provides that, "in the absence of a timely response, [a] motion may be granted as uncontested except that a summary judgment motion, to which there has been no timely response, will be governed by Fed. R. Civ. P. 56(c)."  E.D. PA. R. CIV. P. 7.1 (Motion practice).  Over six months have elapsed since defendants filed their motion. Mr. Collins has not filed a response addressing the merits of his § 1981 claim.  Accordingly, Local Rule 7.1 authorizes this court to grant defendants' motion as to the § 1981 cause of action as uncontested.

(quotations and citation omitted).

Here there is no dispute that the plaintiff, an African American, is a member of a racial minority.  Under the second element, the defendants intended to discriminate against the plaintiff on the basis of his race.  The plaintiff avers that Dr. Columbo and LVH "failed to follow protocol and rushed to judgment [regarding Mr. Lloyd's diagnosis] because Plaintiff was African American."  Compl. ¶ 93.  This discrimination that occurred on the part of these defendants, however, does not relate to the plaintiff's rights to make and enforce contracts.  Following different procedures and acting with greater care when the alleged perpetrator of elder abuse is a non-minority does not relate to the making or enforcement of contracts.  Although the information provided by Dr. Columbo led to the arrest of the plaintiff, which led to the plaintiff's subsequent termination from Country Meadows, the plaintiff does not aver that Dr. Columbo or LVH intended to interfere with the plaintiff's employment contract.  See infra Part III.B.1.  Even accepting as true the allegations in the complaint and drawing all reasonable inferences in favor of the plaintiff, the plaintiff fails to allege a claim cognizable under § 1981.  Accordingly, I will dismiss the § 1981 cause of action (Count VI) against defendants Dr. Columbo and LVH.

### 3.    Negligence Claim

The plaintiff attempts to hold Dr. Columbo and Lehigh Valley Hospital liable under a state law claim predicated on their negligence.  According to the complaint, these two defendants owed the plaintiff a "duty of due care to provide true and accurate information

and diagnosis to the police" and they breached that duty.  Dr. Columbo and LVH move the court to dismiss the negligence claim because, as a matter of law, they owed no duty of care to the plaintiff under the circumstances.

"The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff."  Althaus v. Cohen, 756 A.2d 1166, 1168 (Pa. 2000).  Whether a defendant owes a duty of care to a particular plaintiff is a question of law.  See Kleinknecht v. Gettysburg Coll., 989 F.2d 1360, 1366 (3d Cir. 1993)  The Pennsylvania Supreme Court in Althaus v. Cohen articulated five factors that should be weighed when determining whether a duty exists in a particular case: (1) relationship between the parties; (2) social utility of the defendants' conduct; (3) nature of the risk imposed and foreseeability of the harm incurred; (4) consequences of imposing a duty upon the defendant; and (5) the overall public interest in the proposed solution.  See Althaus, 756 A.2d at 1169.  Since no one factor is dispositive, a court must impose a duty of care when the balance of the factors weighs in favor of placing such a burden on a defendant.  See Phillips v. Cricket Lighters, 841 A.2d 1000, 1008-09 (Pa. 2003).  Based upon an analysis of the relevant factors, I hold that as a matter of law the defendants Dr. Columbo and LVH did not owe a duty to Mr. Collins in their reporting of medical information to the police.

Under the first factor, no relationship existed between the plaintiff and Dr. Columbo and LVH at the time in question.  Dr. Columbo only examined Mr. Lloyd.  Dr. Columbo only entered a physician-patient relationship, and undertook its corresponding

duties, with Mr. Lloyd.  Although Dr. Columbo knew or should have known that the information provided to the police could implicate Mr. Lloyd's care giver, the complaint does not suggest that Dr. Columbo or LVH participated in the criminal investigation of the plaintiff.  Moreover, aside from alleging that Dr. Columbo was informed that Mr. Lloyd's assailant was African-American, there is no indication that Dr. Columbo or LVH knew the plaintiff's identity prior to this lawsuit.  Therefore, the first factor does not weigh in favor of imposing a duty of care on Dr. Columbo or LVH.

There is a strong social utility to Dr. Columbo's actions to be weighed against the nature of the risk and foreseeability of harm.  See Althaus, 756 A.2d at 1170.  Much like the evil of child sexual abuse discussed in Althaus, elder abuse is a serious problem in today's society.  As with child abuse, the Pennsylvania Legislature has responded to this harm by passing legislation to encourage and protect the reporting of suspected elder abuse.  See Older Adults Protective Services Act, 35 PA. CONS. STAT. 10225.101, et seq.[13]

---

[13]Since the concept of duty "amounts to no more than the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection from the harm suffered," Althaus, 756 A.2d at 1168-69, it is beneficial to state the legislative policy behind the Older Adults Protective Services Act:

> It is declared the policy of the Commonwealth of Pennsylvania that older adults who lack the capacity to protect themselves and are at imminent risk of abuse, neglect, exploitation or abandonment shall have access to and be provided with services necessary to protect their health, safety and welfare. . . . [T]his act should be liberally construed to assure the availability of protective services to all older adults in need of them. Such services shall safeguard the rights of incapacitated older adults while protecting them from abuse, neglect, exploitation and abandonment. It is the intent of the General Assembly to provide for the detection and reduction, correction or elimination of abuse, neglect, exploitation and abandonment, and to establish a program of protective services for older adults in need of them.

35 PA. CONS. STAT. § 10225.102.

It is necessary and vital to this stated social policy that health care providers, especially in the emergency setting, report any suspicious injuries of older adults to the proper authorities.  Thus, the social utility of reporting injuries of older adults disfavors creating a duty of care to the suspected abuser.  This conclusion is reinforced by the immunity from civil liability under the Older Adults Protective Services Act for a person who reports elder abuse.  See 35 PA. CONS. STAT. § 10225.302.[14]

Balanced against this social utility in reporting an alleged abuse, however, is the potential risk of an erroneous report.  As shown by the allegations in this case, to provide a police officer with false or inaccurate information results in a substantial harm to the accused, including his termination from his employment and his arrest and incarceration. This harm is foreseeable given the involvement of the police and the seriousness of the accusations.  This factor weighs in favor of imposing a duty of care.

However, based on the facts alleged in the complaint, the social utility in reporting Mr. Lloyd's injuries outweighs the foreseeable harm and, therefore, advises against imposing upon Dr. Columbo and LVH a duty of care to the plaintiff.  See Kelley v. General Teamsters, Local Union 249, 544 A.2d 940, 942 (Pa. 1988) (noting, in a malicious prosecution case, that between the interest of society in law enforcement and the individual interest in freedom from false accusation "the interest in preservation of the

---

[14]"Any person participating in the making of a report [of elder abuse] . . . shall be immune from any civil or criminal liability on account of the report . . . unless the person acted in bad faith or with malicious purposes."  35 PA. CONS. STAT. § 10225.302(d).  The complaint does not allege that either Dr. Columbo or LVH acted in bad faith or with malice.

14

public order is the more important of the conflicting public policies").  The significance of the "foreseeability of the harm" factor is lessened because Dr. Columbo merely reported his misdiagnosis to an independent third-party, the police.  Dr. Columbo did not accuse the plaintiff of the alleged abuse, but provided the information to the police to allow them to investigate any wrongdoing.  According to the complaint, Country Meadows, its employees, and Mr. Lloyd conspired to falsely charge the plaintiff with the abuse.  Moreover, Mr. Lloyd suffered from Alzheimer. His condition, and his inability to defend himself, heightened the social utility of Dr. Columbo's actions.

A consideration of the final two factors does not support creating for a health care professional who treats an injured older adult a duty of care to a person who is eventually charged with elder abuse.  Two consequences are possible if this additional duty is imposed on a health care professional: (1) it could result in a health care professional exercising greater caution when evaluating a senior patient; and/or (2) it could result in a health care professional being less likely to report any suspected cases of elder abuse.  While the former consequence is desirable, it is superfluous since Dr. Columbo already owed a duty of care in his treatment of his patient Mr. Lloyd.  The latter, and more likely, consequence would harm older adults and defeat the state's acknowledged policy of protecting older adults.  See, e.g., Davis v. Equibank, 603 A.2d 637, 638 (Pa. Super. Ct. 1992) ("[I]t is generally recognized that to allow recovery where an individual's provision of incorrect or mistaken information results in the arrest of another would have a

15

substantial chilling effect upon the willingness of citizens to come forward with

information relevant to criminal investigations. . . . [I]t is difficult enough under the

present status of the law to conduct investigations and gather information without the

natural dissuasion that potential liability would create.")

Finally, given this country's aging baby-boomer population and society's interest in

encouraging the reporting of elder abuse, the overall public interest will be served by

promoting and fostering communication between health care providers and law

enforcement officials in the area of elder abuse.  In situations where the questioned

conduct of a health care provider is intentional, the circumstances and liability may be

different, but the plaintiff does not allege that Dr. Columbo intentionally or knowingly

provided inaccurate information.  See also Althaus, 756 A.2d at 1171 (citing Althaus v.

Cohen, 710 A.2d 1147, 1168 n.1 (Pa. Super. Ct. 1998) (J. Schiller, dissenting), for the

position that other independent causes of action may be available to a person falsely

accused of abuse, such as defamation or intentional infliction of emotional distress, based

on actions taken beyond the scope of the medical diagnosis and treatment).

Accordingly, I find that defendants LVH and Dr. Columbo did not owe a duty of

care to the plaintiff with regard to the reporting of Mr. Lloyd's medical information and

diagnosis to the police.  As a result, the plaintiff fails to state a claim for negligence

against LVH and Dr. Columbo and I will grant LVH and Dr. Columbo's motion with

respect to Count VIII of the complaint.[15]

        4.     Malicious Prosecution Claim

LVH and Dr. Columbo move to dismiss the state law cause of action for malicious prosecution in Count XII of the complaint.  The defendant health care providers argue that the plaintiff fails to allege that they initiated the subject criminal proceedings.  The plaintiff responds by simply stating that the complaint "clearly and specifically" alleges the required elements to state a claim for malicious prosecution.

In order to state a claim for malicious prosecution under Pennsylvania law, the plaintiff must aver that the defendant: (1) instituted proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in favor of the plaintiff.  Corrigan v. Cent. Tax Bureau of Pa., Inc., 828 A.2d 502, 505 (Pa. Commw. Ct. 2003).  Under the first element, the complaint must allege that the "defendant either directly instituted the proceedings against the plaintiff or can be charged with the responsibility for the institution of the proceedings."  Griffiths v. CIGNA Corp., 988 F.2d 457, 464 (3d Cir. 1993).  Pennsylvania courts rely on section 653, comment g, of the Restatement (Second) of Torts in determining a defendant's responsibility for the initiation of a criminal proceeding.  See id.; Cooper, 2006 U.S. Dist. LEXIS 23388, at *16-19; Bradley v. Gen. Accident Ins., 778 A.2d 707, 710-11 (Pa. Super. Ct. 2001).

Comment g provides guidance as to when a private individual or entity can be

---

[15]Since I have dismissed the negligence claim against defendants LVH and Dr. Columbo, I have also dismissed the plaintiff's claim for punitive damages.  See Compl. ¶¶ 119-122.

responsible for initiating a criminal proceeding by providing information to police.

"[C]omment g distinguishes between situations in which a private individual merely

provides information to an official who exercising discretion, may initiate charges, and

those in which a private individual either provides knowingly false statements to an

official or directs or pressures an official to initiate charges, thereby making the officer's

intelligent use of discretion impossible." See Bradley, 778 A.2d at 711.  As comment g

states:

> In order to charge a private person with responsibility for the initiation of
> proceedings by a public official, it must therefore appear that his desire to
> have the proceedings initiated, expressed by direction, request or pressure
> of any kind, was the determining factor in the official's decision to
> commence the prosecution, or that the information furnished by him upon
> which the official acted was known to be false.

RESTATEMENT (SECOND) OF TORTS § 653, cmt. g.

Here, the plaintiff does not allege that defendants Dr. Columbo or LVH pressured

or directed law enforcement officials to prosecute the plaintiff.  The complaint merely

alleges that Dr. Columbo failed to follow hospital protocol when he provided Mr. Lloyd's

medical information to the police.  The plaintiff does not claim that Dr. Columbo, or any

one else at LVH, knowingly provided false information to the police regarding Mr.

Lloyd's injuries.  Absent allegations of intentional false statements by Dr. Columbo or

another at LVH, Dr. Columbo and LVH are not liable for the discretionary decisions made

by law enforcement officials to institute "proceedings" against the plaintiff.  See Griffins,

988 F.2d at 466 (recognizing that the duty falls on police and prosecutors, not private

18

individuals, to determine significant facts in an investigation). Therefore, the complaint does not satisfy the first element of a malicious prosecution claim

Accordingly, the plaintiff has failed as a matter of law to state a claim against defendants Dr. Columbo and LVH for malicious prosecution. I will grant the defendants' motion to dismiss the malicious prosecution claim (Count XII) against Dr. Columbo and LVH.

B.      *Defendant Marilyn Christie's Motion to Dismiss*

1.      42 U.S.C. § 1981 Cause of Action

Defendant Christie seeks dismissal of the 42 U.S.C. § 1981 claim against the estate of Mr. Lloyd. She argues that the complaint fails to allege a viable claim under § 1981 because the plaintiff is attempting to impose liability on a third party that has an attenuated connection to the plaintiff and his employment contract. The plaintiff relies on several cases in this district to support his position that a third party can incur section 1981 liability for interfering with another's right to make and enforce contracts. At this stage of the case, the plaintiff avers enough facts to support his position and I will allow discovery to go forward to determine Mr. Lloyd's actual role in the plaintiff's termination.[16]

_____

[16]As noted above, a plaintiff alleging a claim pursuant to § 1981 must plead sufficient facts in support of the following elements: "(1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts." Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001) (quotations and citation omitted). The parties do not dispute that the plaintiff was a racial minority. As for the second element, the complaint sets forth sufficient facts to establish that Mr. Lloyd's interference with the plaintiff's employment was due to the plaintiff's race. See Compl. ¶¶ 11, 16-20.

A third party can be liable under § 1981 if that party intentionally interferes, on the basis of race, with another's right to make and enforce contracts, regardless of whether the employer or anyone else may also be liable.  See McClease v. R.R. Donnelley & Sons Co., 226 F. Supp 2d 695, 699 (E.D. Pa. 2002); Cimino v. Del. Dep't of Labor, No. 01-458, 2002 U.S. Dist. LEXIS 2979, at *15-17 (D. Del. Feb. 25, 2002) (quotation and citation omitted); Pryor v. Nat'l Collegiate Athletic Ass'n, 153 F. Supp. 2d 710, 718 (E.D. Pa. 2001), rev'd in part on other grounds, 288 F.3d 548 (3d Cir. 2002).  Making and enforcing contracts is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

In the present action, the plaintiff has alleged that Mr. Lloyd knowingly made false accusations against the plaintiff, due to the plaintiff's race, to Country Meadows for the express purpose of jeopardizing the plaintiff's employment.  Specifically, Mr. Lloyd falsely charged the plaintiff with physically assaulting him.  In the nursing home setting, such an accusation by a resident carries serious ramifications.  Mr. Lloyd's racially-motivated actions allegedly resulted in the plaintiff being terminated from his position at Country Meadows, thus interfering with the plaintiff's employment contract. See also Belfast v. Upsilon Chptr. of Pi Kappa Alpha Fraternity, 267 F. Supp. 2d 1139, 1144-46 (D. Ala. 2003) (holding that a third party can be held liable under section 1981 for interfering with the plaintiff's postformation performance under an employment contract).

Accordingly, I will deny defendant Christie's motion to dismiss with respect to the § 1981 claim against her, as executor of the estate of Edwin Lloyd.[17]

      2.      Section 1985(3) Cause of Action[18]

Defendant Christie argues that the 42 U.S.C. § 1985(3) conspiracy claim against the estate of Mr. Lloyd must be dismissed because the plaintiff fails to allege that the conspiracy's intent was to interfere with rights protected against private encroachment.  I agree with Ms. Christie.

In order to bring a cause of action under § 1985(3) for private conspiracy, a plaintiff must demonstrate, inter alia, "(a) that a racial or other class-based invidious discriminatory animus lay behind the coconspirators' actions, (b) that the coconspirators

---

[17]Defendant Christie also argues in her motion that all of the counts against Mr. Lloyd should be dismissed because he suffered from Alzheimer's/dementia.  In her view, Mr. Lloyd's mental condition prevented him from possessing the requisite state of mind to satisfy the elements of each claim.  Such an argument is premature.  I am in no position to determine Mr. Lloyd's mental state at any of the relevant times based upon the allegations in the complaint.  See Boyce v. Fernandes, 77 F.3d 946, 949 (7th Cir. 1996) ( "There are different types and severities of dementia. . . . [T]he severity of the dementia varies from day to day, even from hour to hour. . . . Contract law, property law, and criminal law alike have rejected a per se rule that demented persons are legally incompetent.").

[18]Although the complaint is not clear as to what section of 42 U.S.C. § 1985 Mr. Lloyd allegedly violated, in his response to the motion to dismiss the plaintiff indicates that Count II's cause of action rests on section 1985(3).  Section 1985(3) states, in pertinent part:

> If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . .[and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for recovery of the damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

intended to deprive the victim of a right guaranteed by the Constitution against private impairment, and (c) that that right was consciously targeted and not just incidentally affected." Brown v. Philip Morris, Inc., 250 F.3d 789, 805 (3d Cir. 2001) (quotations and citation omitted).  To date, the Supreme Court has only recognized two rights protected under § 1985(3) from private impairment: the right to be free from involuntary servitude and the right to interstate travel.  See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 278 (1993); Brown, 250 F.3d at 805; Harden v. RR Donnelly, No. 01-6147, 2002 U.S. Dist. LEXIS 12124 (E.D. Pa. Apr. 1, 2002); Caswell v. The Morning Call, Inc., No. Civ. A. 95-7081, 1996 U.S. Dist. LEXIS 14516, at *6 (E.D. Pa. Sept. 30, 1996).

Here, the complaint alleges that Mr. Lloyd agreed with several staff members of Country Meadows to take certain actions against the plaintiff because of the plaintiff's race.  See Compl. ¶¶ 29-34.  The actions included making false assault accusations and initiating a criminal investigation.  See id.  The purpose of this agreement or conspiracy was to have the plaintiff terminated from his job and arrested.  See id.  While these claims indicate the conspiracy was motivated by a racial discriminatory animus, there is no allegation that the conspiring, private defendants intended to impinge on the plaintiffs' rights to interstate travel or to be free from involuntary servitude — the only two rights recognized under § 1985(3) to be protected from private encroachment.  Therefore, the complaint fails to state a § 1985(3) cause of action.

The plaintiff's attempts to salvage this claim against Ms. Christie fail.  First, the

plaintiff appears to argue that § 1985(3) imposes liability on private parties who engage in a conspiracy to violate § 1981.  The Court of Appeals for the Third Circuit has not recognized such a theory and, indeed, has strongly suggested that it would not do so.  In Brown v. Philip Morris, the Third Circuit noted that "the great weight of precedential authority" supports the view that § 1985(3) claims are limited to questions of interstate travel and involuntary servitude and "does not suggest that §§ 1981 . . . claims in general may form the basis of a § 1985(3) action."  250 F.3d at 806.  I recognize that the Third Circuit did not decide in Brown whether claims under § 1981 can form the basis of a § 1985(3) action.  See id. (noting that it does not need to resolve the question whether violations of § 1981 can support a § 1985(3) claim because the plaintiff failed to state a claim under § 1981).  However, I join with my colleagues who have held that the strong language of the Court of Appeals in Brown prohibits a plaintiff from asserting a § 1985(3) claim based on a violation of § 1981.  See McClease v. R.R. Donnelley & Sons Co., 226 F. Supp 2d 695, 702 (E.D. Pa. 2002); Harden v. RR Donnelly[sic], No. 01-6147, 2002 U.S. Dist. LEXIS 12124, at *4-6 (E.D. Pa. Apr. 1, 2002).  Second, the plaintiff argues that his arrest had the effect of preventing him from traveling interstate.  Even though such a claim may be true, plaintiff's interstate travel must be "consciously targeted" by the alleged conspiracy and "not just incidentally affected."  Bray, 506 U.S. at 275-276 (noting that "it does not suffice for application of § 1985(3) that a protected right be incidentally affected," rather "the right must be 'aimed at'").

23

Accordingly, I will grant defendant Christie's motion to dismiss with respect to the § 1985 claim (Count II) against the estate of Mr. Lloyd.

### 3.    Malicious Prosecution Claim[19]

Defendant Christie moves this court to dismiss Count IX of the complaint that alleges Mr. Lloyd committed the tort of malicious prosecution.  Christie argues that the complaint fails to allege any facts that would suggest that Mr. Lloyd initiated a criminal proceeding against the plaintiff.  The plaintiff contends that he satisfactorily states a claim for malicious prosecution against Mr. Lloyd.  I agree with the plaintiff.

As noted above, in order to hold a private individual liable for initiating a criminal proceeding, he must knowingly provide false information to a law enforcement official upon which the official acts.  See Bradley, 778 A.2d at 711.  Viewing the complaint in the plaintiff's favor, it claims that Mr. Lloyd informed the police that he was assaulted and injured by the plaintiff when Mr. Lloyd knew the accusation was false.  See Compl. ¶¶ 21, 34.  The plaintiff was arrested and prosecuted based on these knowingly false statements.  See Compl. ¶¶ 25, 34.  Therefore, the plaintiff successfully pleads the first element of a malicious prosecution claim.

The plaintiff also successfully pleads the other necessary elements of a malicious

---

[19]As noted in Part III.A.4 supra, in order to state a claim for malicious prosecution under Pennsylvania law, the plaintiff must aver that the defendant: (1) instituted proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in favor of the plaintiff.  Corrigan v. Cent. Tax Bureau of Pa., Inc., 828 A.2d 502, 505 (Pa. Commw. Ct. 2003).

prosecution claim.  Mr. Lloyd lacked probable cause to initiate the criminal proceeding

against the plaintiff because he knew the assault did not occur.  See McKibben v.

Schmotzer, 700 A.2d 484, 492 (Pa. Super. Ct. 1997) (defining probable case as "a

reasonable ground or suspicion supported by circumstances sufficient to warrant an

ordinary prudent man in the same situation in believing that the party is guilty of the

offense").  Mr. Lloyd's actions were malicious because he leveled the false charges

against the plaintiff for racially-motivated reasons and with the intent to terminate his

employment.  See Schmoltze v. County of Berks, No. 99-1069, 2000 U.S. Dist. LEXIS

503, at *17 (E.D. Pa. Jan. 14, 2000) ("Actual malice is defined as ill will or spite, lack of

belief by the actor himself in the propriety of the prosecution, or use of a prosecution for

an extraneous improper purpose.").  Finally, the criminal proceedings terminated in the

plaintiff's favor as the charges were *nolle prossed* and dismissed by the district attorney

due to insufficient evidence.  See Haefner v. Burkey, 626 A.2d 519, 521 (Pa. 1993)

(holding that the proceedings terminated in favor of the plaintiff when the "prosecution

formally abandoned the criminal proceedings against appellant when it nolle prossed the

remaining charges because of insufficient evidence").

Regardless of the court's decision regarding the merits of the malicious prosecution

claim, Defendant Christie requests this court to dismiss the plaintiff's claim for attorney's

fees in connection with the malicious prosecution claim.  See Equibank v. Miller, 619

A.2d 336, 338 (Pa. Super. Ct. 1993) ("The relevant general rule with regard to counsel

fees is that the parties to litigation are responsible for their own fees unless otherwise provided by statutory authority, agreement of the parties or some other recognized exception."). The plaintiff agrees that the claim for attorney's fees should be stricken from the malicious prosecution count. Therefore, I will grant defendant Christie's request and dismiss the plaintiff's claim for attorney's fees in connection with the malicious prosecution count.

Accordingly, the plaintiff has stated a claim for malicious prosecution against Mr. Lloyd and I will deny defendant Christie's motion to dismiss the malicious prosecution claim (Count IX) against Mr. Lloyd's estate. I will, however, strike the request for attorney's fees in the claim's request for relief.

### 4.    Abstention Under the *Colorado River* Doctrine

In her motion to dismiss, defendant Christie requested, in the alternative, a stay or remand to state court of this case pursuant to the Colorado River doctrine. See Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). As the various responses to this request correctly point out, the Colorado River abstention doctrine is not applicable here. See Docket Nos. 37, 38.

This case was initially filed in Pennsylvania state court on September 21, 2006, and removed to this court on October 19, 2006. On September 13, 2006, Ms. Christie, on behalf of Mr. Lloyd's estate, filed a civil action in Pennsylvania state court against Mr. Collins and the Country Meadows entities. Her suit arises from the alleged injuries Mr.

Lloyd suffered at the hands of Mr. Collins and involves state law claims that are predicated on theories of negligence and intentional tort.

In order to stay this case under Colorado River, Christie must demonstrate the existence of (I) parallel federal and state cases, and (ii) "exceptional circumstances" that warrant abstention. See Spring City Corp. v. Am. Bldg. Co., 193 F.3d 165, 171 (3d Cir. 1999). Christie fails to establish the threshold requirement. The federal and state court cases at issue are not parallel, *i.e.*, they do not involve the same parties and "substantially identical" claims, raising "nearly identical allegations and issues." See Yang v. Tsui, 416 F.3d 199, 205 n.5 (3d Cir. 2005).

First, one of the remaining defendants in this action, Officer Lipare, is not a party in the state court action. Second, while Christie's action involves only state tort claims due to Mr. Lloyd's injury, Mr. Collins's federal complaint raises several federal civil rights claims due to Mr. Collins's injuries. Third, the alleged assault at the center of Christie's state action serves only as background for the underlying allegations and violations in the federal suit. Finally, Christie seeks damages due to the personal injuries sustained by Mr. Lloyd. In this federal action, Collins's damages result from the lost of his job and his arrest, incarceration, prosecution, and trial. See Arris Sys., Inc. V. Nexploration Co., No. 06-4094, 2006 U.S. Dist. LEXIS 80207, at *3-4 (E.D. Pa. Nov. 1, 2006) (holding that a federal case and a state case are not parallel because federal complaint contained additional allegations); Kuhn v. Oehme Carrier Corp., 255 F. Supp. 2d 458, 463-64 (E.D.

27

Pa. 2003) (noting that even though state and federal cases may arise from a common nucleus of operative facts they are not "truly duplicative" because they involve both distinct issues and distinct parties).

Thus, I will deny defendant Christie's request to stay this federal action pending the resolution of her state court action.

C.    *Defendants Adam Columbo and Lehigh Valley Motion to Dismiss Medical Negligence Claim Pursuant to Fed. R. Civ. P. 41(b) and Motion to Strike Plaintiff's Certificate of Merit*

Defendants Dr. Columbo and LVH filed two additional motions relating to the negligence claim (Count VIII) against them: (1) a motion to dismiss the medical negligence claim pursuant to Fed. R. Civ. P. 41(b) due to the plaintiff's failure to file a Certificate of Merit as required by Pennsylvania law in professional malpractice actions; (2) motion to strike the plaintiff's certificate of merit.[20]  Since I have already dismissed the negligence claim against Dr. Columbo and LVH, see supra III.A.3, I will deny these motions as moot.

**IV.    CONCLUSION**

Based on the foregoing, I will grant defendants Dr. Columbo and LVH's motion to dismiss in its entirety.  In Count VI (§ 1981 and § 1983), Count VIII (negligence), and Count XII (malicious prosecution), the plaintiff fails to state a valid claim against Dr.

---

[20]See Ditch v. Waynesboro Hospital, 917 A.2d 317, 321-22 (Pa. Super. Ct. 2007) (discussing the two fundamental questions a court must ask to determine if a claim sounds in ordinary negligence or medical malpractice); Gonder v. Bio-Medical Applications, Inc., 919 A.2d 283 (Pa. Super. Ct. 2007).

Columbo and LVH.  As for defendant Christie's motion to dismiss, I will grant it in part and deny it in part.  I will grant the motion with respect to Count II (§ 1985 conspiracy) and the claim for attorney's fees in Count IX (malicious prosecution).  I will deny the motion with respect to Count I (§ 1981) and the merits of Count IX (malicious prosecution).  Finally, I will deny defendant Christie's request to stay this federal action under the <u>Colorado River</u> abstention doctrine.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN STERLING COLLINS, | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| v. | : | NO. 06-4702 |
| | : | |
| MARILYN L. CHRISTIE, | : | |
| executrix of estate of Edwin | : | |
| Lloyd, deceased, et al., | : | |
| **Defendants.** | : | |

## <u>ORDER</u>

**AND NOW**, this 22nd day of August, 2007, upon consideration of defendants Dr. Adam Columbo and Lehigh Valley Hospital, Inc.'s motions to dismiss (Docket Nos.8 and 42) and motion to strike (Docket No. 51), defendant Marilyn L. Christie's motion to dismiss (Docket No. 32), and all responses thereto, it is hereby **ORDERED** that:

(1)   Defendants Dr. Adam Columbo and Lehigh Valley Hospital's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 8) is **GRANTED** in its entirety.  Count VI (§ 1981 and § 1983), Count VIII (negligence), and Count XII (malicious prosecution) are dismissed for failing to state valid claims against Dr. Adam Columbo and Lehigh Valley Hospital.

(2)   Defendants Dr. Adam Columbo and Lehigh Valley Hospital's Motion to Dismiss the Claims for Medical Negligence Pursuant to Fed. R. Civ. P. 41(b) (Docket No. 42) and Motion to Strike Plaintiff's Certificate of Merit (Docket No. 51) are **DENIED** as moot.

(3)    Defendant Marilyn L. Christie's Motion to Dismiss Pursuant to Rule

12(b)(6) or, in the Alternative, Request for Stay or Remand Pursuant to the

Colorado River Abstention Doctrine (Docket No. 32) is **GRANTED in part**

**and DENIED in part**.  I will grant the motion with respect to Count II (§

1985 conspiracy) and the claim for attorney's fees in Count IX (malicious

prosecution).  I will deny the motion with respect to Count I (§ 1981) and the

merits of Count IX (malicious prosecution).  Finally, I will deny defendant

Marilyn Christie's request to stay this federal action under the Colorado

River abstention doctrine.

The parties remaining in this suit shall conduct discovery according to the

Scheduling Order dated January 17, 2007.  See Docket No. 57.  A telephone status

conference has been scheduled for **Friday, December 14, 2007 at 10:00 a.m.**  Plaintiff's

counsel shall initiate the telephone call.

BY THE COURT:


 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.

2